**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 6, 2013

Lyle W. Cayce
Clerk

No. 12-31005

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

DWIGHT ANTHONY REED

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Louisiana

Before SMITH, HAYNES, and GRAVES, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

Following a jury trial, Reed was convicted of multiple counts of trafficking in counterfeit goods and sentenced to forty-eight months' imprisonment. Reed appealed his conviction and sentence but subsequently dismissed the appeal voluntarily. Reed then filed a motion under 28 U.S.C. § 2255 seeking to vacate his conviction and sentence on various grounds, including ineffective assistance of counsel. The district court denied Reed's motion and denied a certificate of appealability. On Reed's motion, this court granted a certificate of appealability only on the issue of whether the district court erred in denying, without conducting an evidentiary hearing, Reed's claim that his trial counsel was ineffective in failing to properly advise him on the sentence he would have faced

No. 12-31005

had he accepted the government's plea offer.  For the following reasons, we VACATE the district court's order with respect to this issue only and REMAND for an evidentiary hearing.

## BACKGROUND

Reed was the owner of a clothing store operating in the Pierre Bossier Mall in Bossier City, Louisiana.  On September 25, 2009, Reed was charged in a twenty-one-count indictment.  The indictment alleged that in 2005 and 2006, Reed trafficked in counterfeit goods with brands such as Nike, Louis Vuitton, Gucci, and Coach.  In Reed's affidavit attached to his § 2255 motion, he states that he had an initial conference with his trial counsel in November or December 2009.  According to Reed, counsel informed him that the government had offered a plea deal in which Reed would plead guilty to the count involving Louis Vuitton merchandise and the remaining counts would be dismissed.  Reed further states that counsel informed him that, based on the Sentencing Guidelines, he would be facing a thirty-six month sentence if he accepted the plea deal and a forty-eight- to sixty-month sentence if he went to trial.

On March 25, 2010, Reed was charged in a twenty-one-count superseding indictment that was nearly identical to the original indictment.  According to Reed's affidavit, his trial counsel met with him in April 2010 and once again stated that he would face thirty-six months if he pleaded guilty and forty-eight to sixty months if he went to trial.  In his § 2255 motion, Reed suggests that he proceeded to trial because the potential sentencing exposure did not seem much worse than what he would face if he accepted the plea deal.  Although two of the counts were dismissed on the first day of trial, the jury convicted Reed on all remaining counts.  Reed testified at trial, and at one point admitted that he knew he had been selling counterfeit Louis Vuitton and Coach purses.  R. 1055. However, he stated that he did not know that any of the other merchandise he sold was counterfeit.  *Id.*

No. 12-31005

The presentence report ("PSR") calculated a base offense level of eight for trafficking in counterfeit goods and an eight-level increase based on the calculated retail value of the counterfeit goods attributed to Reed. The PSR also recommended a two-level increase on the ground that Reed had obstructed justice by providing false information. The PSR explained that Reed "testified during trial that he was unaware the merchandise he was selling in his store was counterfeit," but noted that Reed had received letters from mall representatives on May 2, 2005, and May 23, 2005, complaining about the sale of counterfeit merchandise from Reed's store. The PSR recommended a total offense level of eighteen and a criminal history category of I, giving Ross an advisory guidelines range of twenty-seven to thirty-three months imprisonment. Ross did not object to the PSR.

The district court accepted the proposed guidelines calculation, including the enhancement for obstruction of justice. The district court stated that "in the trial the defendant took the stand and testified, and it's obvious to the Court that the jury did not buy his side of the story." R. 1132. The district court departed from the guidelines range and imposed a sentence of forty-eight months imprisonment on each count, to run concurrently. The district court explained that Ross's criminal history was underrepresented in the guidelines calculation.

In Ross's § 2255 motion, he contends that his advisory guidelines range would have been eight to fourteen months imprisonment if he had accepted the government's plea deal.[1] Ross argues that his trial counsel rendered ineffective assistance by erroneously stating that he would face a thirty-six month sentence if he accepted the government's plea deal. Ross further argues that he would have accepted the plea deal but for counsel's erroneous overestimation of his sentence. As mentioned above, Ross includes a signed affidavit with his motion.

---

[1] Because a certificate of appealability was granted as to only one claim, Ross's remaining claims are not addressed here.

3

No. 12-31005

The government's response to Ross's motion does not include an affidavit from his trial counsel or otherwise challenge the factual assertions in Ross's affidavit. The government argues only that "besides the defendant's allegations, there is no indication that the attorney ever predicted a certain sentence if the defendant pleaded guilty." S.R. 89. The district court rejected Reed's claim with the following analysis:

> The only evidence Reed offers the Court in conjunction with this allegation [is] his self-serving and uncorroborated account of his discussions with his counsel. This is not a sufficient showing that Reed's counsel was, in fact, ineffective during plea negotiations. Reed made the decision to go to trial. The outcome was not a favorable one for Reed and now he is attempting to go back and benefit from a plea bargain he rejected. The Northern District of Texas has quite correctly referred to this argument as "a quintessential example of attempting to have [one's] cake and eat it too." *Green v. Johnson*, 46 F. Supp. 2d 614, 622-23. In *Green*, the court warned that "if *habeas* relief were freely granted in such circumstances, no rational defendant would ever accept a plea bargain before trial. Instead, he would try to obtain an acquittal at trial and, if unsuccessful, retroactively seek – through *habeas* relief – the benefit of any plea bargain previously offered by prosecution." Based on the lack of competent evidence and the reasoning of *Green*, this allegation must be dismissed.

S.R. 179-80. Reed now appeals the district court's dismissal of his claim.

## DISCUSSION

"[T]he negotiation of a plea bargain is a critical phase of litigation for the purposes of the Sixth Amendment right to effective assistance of counsel." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1486 (2010). "When considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice." *United States v. Rivas-Lopez*, 678 F.3d 353, 356-57 (5th Cir. 2012). "To establish an ineffective assistance claim, a defendant must show that counsel's performance fell below an objective standard of reasonableness

and that there is a reasonable probability that but for counsel's poor performance the result of the proceeding would have been different." *Id.* at 357. As to prejudice, when a defendant alleges that counsel's deficient performance caused him to reject a plea offer, he

> must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012). "Any amount of additional jail time is significant for purposes of showing prejudice." *Rivas-Lopez*, 678 F.3d at 357.

## A.    Deficient performance

The district court made no factual findings and did not conclude that Reed's allegations were false. Rather, the district court rejected Reed's allegation of deficient performance, without holding an evidentiary hearing, on the ground that Reed's "self-serving and uncorroborated account of his discussions with his counsel" was "not a sufficient showing that Reed's counsel was, in fact, ineffective during plea negotiations." S.R. 179.

We review the district court's denial of an evidentiary hearing for abuse of discretion. *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006). "A motion brought under 28 U.S.C. § 2255 can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (per curiam). Conclusory allegations, unsubstantiated by evidence, do not support the request for an evidentiary hearing. *United States v. Auten*, 632 F.2d 478, 480 (5th Cir. 1980).

No. 12-31005

A defendant is entitled to an evidentiary hearing on his § 2255 motion only if he presents "independent indicia of the likely merit of [his] allegations." *See United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008). However, this requirement must be understood practically, in the context of the claim being presented. For example, when a defendant's allegations contradict his sworn testimony given at a plea hearing, we have required more than "mere contradiction of his statements," typically "specific factual allegations supported by the affidavit of a reliable third person." *United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1986); *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985). Similarly, speculative and unsupported accusations of government wrongdoing do not entitle a defendant to an evidentiary hearing. *See, e.g.*, *United States v. Auten*, 632 F.2d 478, 480 (5th Cir. 1980) ("Auten does not point to any evidence, nor do we find any in the record, to support his allegation that the government knowingly used perjured testimony . . . . Auten's conclusory assertions do not support the request for an evidentiary hearing."); *United States v. Edwards*, 442 F.3d 258, 265 (5th Cir. 2006) ("Our review of the record reveals no factual support for this improbable scenario [involving alleged government *Brady* violations]; instead, the record affirmatively contradicts Appellants' arguments.").

By contrast, Reed's allegations are not speculative or conclusory. In his affidavit, he makes a specific factual claim based on personal knowledge – that trial counsel predicted a thirty-six month sentence if he accepted the government's plea deal. Reed's affidavit constitutes competent evidence sufficient, if believed, to establish that counsel in fact made such a prediction. Nor do Reed's allegations contradict any evidence in the record. Moreover, it is hard to imagine what additional evidence Reed could present to establish what his trial counsel told him in a presumably private conversation. An affidavit from Reed's trial counsel would of course be very helpful, but the government

has not obtained such an affidavit and it is not clear how Reed could have obtained it prior to filing his motion. Affidavits from third parties would seemingly be useless here; even if Reed relayed counsel's prediction to others, their testimony would be hearsay and therefore inadmissible to prove that counsel had in fact made the prediction. Because Reed's affidavit was sufficient to prove his allegation and was not speculative, conclusory, plainly false, or contradicted by the record, the district court erred in rejecting it without holding an evidentiary hearing.

The government suggests that Reed's allegations are inherently improbable because Reed alleges a prediction of a fixed sentence rather than a range. The government notes that Ross's trial counsel was an assistant federal public defender, and argues that "[a]dvising a defendant of a specific sentence (36 months) rather than a range is not consistent with the practice of attorneys with experience in federal criminal matters such as attorneys with the Federal Public Defender's office." Red Brief at 14. However, to prove deficient performance, Reed must show that counsel's performance fell below an objective standard of reasonable lawyering. It would be ironic to reject his claim as unbelievable precisely because he alleges conduct that is inconsistent with the normal practice of experienced attorneys.

Assuming trial counsel did predict a thirty-six month sentence for Reed if he accepted the government's plea offer, it is unclear whether this constituted deficient performance. With the benefit of hindsight, thirty-six months does appear to be a significant overestimation of Reed's likely guidelines range. Absent a two-level obstruction of justice enhancement based on Reed's trial testimony, and with a likely three-level reduction for acceptance of responsibility, Reed's total offense level would be thirteen. With his criminal history, this would provide a guidelines range of twelve to eighteen months imprisonment. Of course, based on the information known to counsel at the time

of her advice to Reed, thirty-six months may well have been a reasonable prediction. But without additional evidence, we cannot say that "the motion and the files and records of the case conclusively show that [Reed] is entitled to no relief." 28 U.S.C. § 2255(b).

## B.     Prejudice

The district court did not address the issue of prejudice. The government nonetheless argues that the district court's dismissal of Ross's claim may be affirmed because Ross has failed to establish prejudice resulting from his trial counsel's allegedly deficient performance. The government does not dispute Ross's description of the plea offer or suggest that it would have been withdrawn or would not have been accepted by the district court. The government argues, though, that Ross would not have accepted the plea offer in any case, and that even if he had, his sentence would not necessarily have been lower.

Ross states in his § 2255 motion that he would have pleaded guilty if he had been given an accurate picture of his sentencing exposure. The government contends that this statement "is not consistent with his assertions of innocence at trial." Red Brief at 15. However, Ross states that he was offered a plea deal in which he would plead guilty to only one count involving counterfeit Louis Vuitton products. Ross did not assert innocence as to this count, and in fact admitted at trial that he knew these products were counterfeit. It is not difficult to conclude that Ross would plead guilty to conduct he was willing to admit at trial.

The government also argues that "even if [Ross] had pleaded guilty, in light of his trial testimony, he would not have necessarily received a reduction for acceptance of responsibility." Red Brief at 15. Apparently, its argument is that because Ross was unwilling to admit to all of the relevant conduct associated with the offense to which he would have pleaded guilty, he may not have been deemed to have accepted responsibility for the offense. However, as

noted above, Ross was clearly willing to admit the conduct underlying the count that was the subject of the plea offer, and "a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction" for acceptance of responsibility. U.S.S.G. § 3E1.1, cmt. 1(A).  In any event, even if Reed would not have received a reduction for acceptance of responsibility, it seems unlikely that he would have received an obstruction of justice enhancement.

The government contends that even if Reed had started from a lower guidelines range, the district court still could have departed upward based on his criminal history.  This is, of course, true, but there is no reason to conclude that the district court would have imposed an even higher upward departure if Reed had pleaded guilty rather than gone to trial.  Because any amount of additional jail time is significant for purposes of showing prejudice, *Rivas-Lopez*, 678 F.3d at 357, it is not at all clear that Ross has not been prejudiced by counsel's allegedly deficient performance.

## CONCLUSION

For the reasons stated above, we VACATE the district court's order dismissing Reed's § 2255 motion only with respect to the claim of ineffective assistance of counsel during plea negotiations.  We REMAND the case to the district court for further proceedings, to include an evidentiary hearing.  We express no view on the merits of Reed's claim.