# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 6, 2021

Lyle W. Cayce
Clerk

No. 19-10783

United States of America,

*Plaintiff—Appellee*,

*versus*

Joe Guzman,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:19-CV-334
USDC No. 4:16-CR-27-1

Before Owen, *Chief Judge*, and Clement and Duncan, *Circuit Judges*.

Per Curiam:[*]

Joe Guzman, federal prisoner # 25208-177, filed a motion for a certificate of appealability ("COA") with the court after the district court denied his 28 U.S.C. § 2255 motion to vacate, set aside, or correct his conviction and sentence. The district court denied Guzman's motion

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-10783

without an evidentiary hearing. It also denied Guzman's request for discovery. We granted Guzman's motion for a COA in part as to the denial of his § 2255 motion, denied it in part as unnecessary with respect to the denial of an evidentiary hearing, and held the portion related to the denial of discovery in abeyance, pending supplemental briefing. We now affirm the district court's judgment.

I.

A federal grand jury returned a one-count indictment against Guzman, alleging that he possessed with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine. After the court appointed attorney John Stickels to represent Guzman, he pleaded not guilty at his initial arraignment hearing. On re-arraignment, however, he pleaded guilty without a plea agreement while simultaneously submitting a factual resume. The factual resume indicated that he possessed approximately 116.8 grams of methamphetamine.

Upon receipt of his factual resume, the district court questioned whether Guzman understood that he was waiving his right to a jury trial. After Guzman confirmed that he understood, the court turned to the penalties Guzman was facing, informing him that the penalties included "[a] term of imprisonment that would have to be at least 5 years and could be as much as 40 years." Guzman—while under oath—confirmed that he understood the punishment that he was facing. The court accepted his guilty plea, ordered the preparation of a presentence report ("PSR"), and set a date for sentencing.

Shortly after re-arraignment, Guzman sent the court, and Stickels, letters claiming that Stickels coerced him into signing the factual resume. He also alleged that Stickels instructed him that no additional drug weight would be attributed to him. The court consequently ordered Guzman and Stickels

No. 19-10783

to meet to try to resolve the issues raised in the letter. The court also required Stickels to file a subsequent report notifying the court of the outcome of that meeting. Stickels met with Guzman approximately two weeks later. He filed a report the same day, which represented that all issues were resolved and that they were preparing for sentencing.

At his sentencing hearing, the district court denied all of Guzman's objections to the PSR and its accompanying addendum. The district court also adopted the addendum's recommendation to add a two-offense-level increase for obstruction of justice to Guzman's total offense level. Accordingly, the court determined that Guzman's total offense level was 37, his criminal history category was VI, and his guideline range was 360 months to life imprisonment. Because the statutory maximum for a violation of 21 U.S.C. § 841(b)(1)(B) is 40 years, however, his range was capped at 480 months' imprisonment.

Faced with this range, Guzman requested leniency from the court, pleading:

> I'm guilty and I accept full responsibility. I know what I was doing was wrong. I'm a grown man, and I know that I'm going to do a lot of time, and that's okay, but all I ask is just to please be lenient with me and given me a chance, 15, 20 years down the line, to come back home to my wife and kids.

The district court noted Guzman's request and then sentenced him to 480 months' imprisonment—the statutory maximum—with 4 years of supervised release. We affirmed Guzman's sentence on direct appeal. *United States v. Guzman*, 706 F. App'x 836, 837 (5th Cir. 2017) (per curiam), *cert. denied*, 138 S. Ct. 1602 (2018).

After his unsuccessful direct appeal, Guzman filed a § 2255 motion to vacate, set aside, or correct his conviction and sentence. In his motion, Guzman claimed that his attorney misled him to believe that: (1) he would

3

only be held accountable for 116.8 grams of methamphetamine; and (2) he was only facing 7 to 15 years' imprisonment. Guzman asked for an evidentiary hearing and discovery—specifically, an order to subpoena the Federal Bureau of Prisons ("BOP") for audio recordings of phone calls between him and his attorney—to prove his claims. The government opposed discovery and argued that the district court could rely on Guzman's testimony at the re-arraignment and sentencing hearings to reach its decision. The district court agreed with the government and denied Guzman's § 2255 motion without an evidentiary hearing or discovery. It also declined to issue a COA.

Guzman timely filed a motion for a COA, which we granted in part with respect to the district court's denial of his § 2255 motion. We noted that a COA was not required to appeal the denial of an evidentiary hearing, and requested briefing on, *inter alia*: (1) whether a COA is required to appeal the denial of discovery; and (2) whether the district court abused its discretion when denying such a request.

## II.

We review factual findings for clear error and legal conclusions de novo in the § 2255-context. *United States v. Cavitt*, 550 F.3d 430, 435 (5th Cir. 2008) (citing *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006)). As for the denial of a request for discovery or an evidentiary hearing, we review for abuse of discretion. *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (citation omitted); *see Bracy v. Gramley*, 520 U.S. 899, 909 (1997) ("Rule 6(a) makes it clear that the scope and extent of [habeas] discovery is a matter confided to the discretion of the district court." (cleaned up)).

No. 19-10783

### III.

Guzman claims that the district court erred when it denied his § 2255 motion without discovery or an evidentiary hearing.  Because Guzman cannot establish that any purported deficient performance caused him prejudice, we affirm the district court's decision and hold that the district court did not abuse its discretion in foregoing discovery or an evidentiary hearing.  For the same reason, we refrain from addressing whether a COA is required to appeal the denial of discovery.

To prevail on an ineffective-assistance claim, a movant must demonstrate that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985) (holding that *Strickland* applies with equal force in the guilty plea-context). A movant demonstrates deficient performance by showing "that counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  A movant demonstrates prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  Because *Strickland* espouses a conjunctive standard, "[a] court need not address both components of an ineffective assistance of counsel claim if the movant makes an insufficient showing on one."  *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000) (per curiam).

We need not consider whether trial counsel's performance in this matter was constitutionally deficient because Guzman's prejudice showing is insufficient.  Indeed, Guzman cannot establish that, but for trial counsel's assumed error, there is a reasonable probability that he would have foregone a guilty plea and exercised his right to a jury trial.  *See United States v. Green*, 882 F.2d 999, 1002 (5th Cir. 1989) (citation omitted); *see also Hill*, 474 U.S.

at 59 (establishing the same standard).  Critically, Guzman must substantiate any preference to proceed to trial—if he had been properly advised on the sentence he was facing—with "contemporaneous evidence," not post hoc assertions.  *United States v. Lozano*, 757 F. App'x 348, 353 (5th Cir. 2018) (per curiam) (quoting *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017)); *see also United States v. McClinton*, 782 F. App'x 312, 314 (5th Cir. 2019) (per curiam) ("[C]ontemporaneous evidence is the key." (quotation omitted)).  Guzman fails to carry his burden.

Guzman concedes the well-known refrain that "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1997).  Nevertheless, he asks us to discount two sworn statements he made at re-arraignment and sentencing.  First, at re-arraignment, the district court explicitly informed Guzman that, by pleading guilty, he was subjecting himself to a range of 5 to 40 years' imprisonment.  Under oath, Guzman testified that he understood the ramifications of his plea.  Now, however, Guzman asserts that he had "nothing to lose by going to trial, and everything to gain."

Second, at sentencing, Guzman, having had the benefit of reviewing his PSR and the guideline range he was facing, failed to object to the sentence he now claims he would not have willingly faced.  Then, when given the opportunity to address the court *after* the court stated the range he was facing, Guzman admitted his guilt, apologized, and requested a 15 to 20-year sentence rather than a 40-year sentence.  Despite this colloquy, Guzman claims that we should disregard his prior sworn statements because it was Stickel's misrepresentations that caused him to forgo trial.  We are unpersuaded.

Guzman was instructed multiple times that he was facing a maximum sentence of 40 years' imprisonment.  He was not only informed of this

reality, he expressly affirmed, under oath, that he understood his prospective sentence. Tellingly, when given the chance to speak for himself to the court, Guzman did not argue that he misunderstood the sentence he was facing when he pleaded guilty, nor did he claim that his sentence was misrepresented to him. Indeed, he did not even resurrect his claim that he signed his factual resume under coercion. On the contrary, Guzman accepted responsibility for his actions and pleaded for a sentence near the 20-year mark. Curiously, requesting a 20-year sentence diverges from his new claim that he was under the impression that he would only face 7 to 15 years' imprisonment. Simply put, Guzman's assertion that he would have gone to trial but for counsel's supposed errors is belied by the record. We will not "upset [Guzman's] plea solely because of [his] post hoc assertions[.]" *Lozano*, 757 F. App'x at 353 (emphasis and quotation omitted); *see also McClinton*, 782 F. App'x at 314 (noting that the court generally will "not allow a defendant to contradict testimony given under oath at a plea hearing").

## IV.

Finally, we address Guzman's claim that the district court abused its discretion in denying his motion without discovery or an evidentiary hearing. Given the record before it, we hold that the district did not abuse its discretion in denying either request.

"A defendant is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely merit of [his] allegations.'" *Reed*, 719 F.3d at 373 (citing *Cavitt*, 550 F.3d at 442). To contradict sworn testimony, we generally require more than a "mere contradiction of [] statements"; rather, we typically seek "specific factual allegations supported by the affidavit of a reliable third person." *United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1986); *United States v. Fuller*,

769 F.2d 1095, 1099 (5th Cir. 1985). "[S]peculative and unsupported accusations of government wrongdoing do not entitle a defendant to an evidentiary hearing." *Reed*, 719 F.3d at 373 (citation omitted). Guzman provided no independent indicia of the merits of his claim to warrant a hearing. Instead, he provided conclusory allegations, supported only by his own affidavit, which were inconsistent with the bulk of the record—including his prior sworn testimony—before the court. *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998).

Similarly, Guzman failed to demonstrate that the district court's decision to deny § 2255 discovery was reasonably debatable.[1] Like the requirements for an evidentiary hearing, Guzman was required to make specific allegations of fact, not speculative or conclusory statements. *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000). But Guzman fell short again as he did not offer the district court specific facts to support his request.

---

[1] We requested supplemental briefing on whether a COA is required to appeal the denial of § 2255 discovery. Our precedent is anything but clear on the matter. *Compare Young v. Stephens*, 795 F.3d 484, 494 (5th Cir. 2015) ("A COA is not required to review the district court's ruling on a non-merits issue[.]" (citation omitted)), *and Smith v. Kelly*, 301 F. App'x 375, 376 (5th Cir. 2008) (per curiam) (stating, in an unpublished case, that a COA is unnecessary to appeal the denial of a request for discovery), *with United States v. Fields*, 761 F.3d 443, 484 (5th Cir. 2014) ("[W]e deny a COA on Fields's claim concerning his entitlement to discovery[.]"), *and Reed v. Quarterman*, 555 F.3d 364, 367 (5th Cir. 2009) (noting that the court granted a COA as to "whether Reed is entitled to additional discovery"). We do not need to answer this open question now, however. If a COA is required to appeal the denial of a motion for § 2255 discovery, Guzman did not present a reasonably debatable claim. *See Buck v. Davis*, 137 S. Ct. 759, 774 (2017). Likewise, if a COA is *not* required and Guzman could proceed on direct appeal, he failed to establish the good cause required under Rule 6(a) to merit discovery. *See Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000). Because Guzman cannot meet either standard, and because our precedent is unclear on whether a COA is required, our analysis assumes—without deciding—that a COA is required.

Guzman alleged that discovery would have uncovered Stickels' apparent guilty plea misguidance.  To support such a claim, Guzman could have provided the court with, among other things, information like dates, times, the scope of the conversations, the terms of the promises or misstatements, and/or why the BOP would have recorded or transcribed privileged conversations.  But Guzman provided none of the above.  Instead, Guzman merely claimed that he had "reason to believe" that the BOP possessed transcripts and/or recordings that would prove his point.  He offered no statements concerning when Stickel's supposed misstatements occurred or the scope of any purported promises.  *Cervantes*, 132 F.3d at 1110.  Even worse, the little support that Guzman provided—that the statements concerning his potential sentence were given over the phone while he was in BOP custody—was contradicted by evidence that he was in the custody of the U.S. Marshals, not the BOP.

Given this record, the district court's decision to deny discovery is not reasonably debatable; therefore, Guzman is not entitled to a COA on the matter.  *Buck*, 137 S. Ct. at 774 ("Of course when a court of appeals properly applies the COA standard and determines that a prisoner's claim is not even debatable, that necessarily means the prisoner has failed to show that his claim is meritorious.").

AFFIRMED.